**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

DANIEL CLAY,

                            Plaintiff,

    v.                                    No. 09-CV-1245
                                              (GTS/DRH)

MARY D'SILVA, Director of Dental
Services,

                            Defendant.

---

**APPEARANCES:**                                    **OF COUNSEL:**

DANIEL CLAY
Plaintiff Pro Se
09-A-0386
Auburn Correctional Facility
Post Office Box 618
Auburn, New York 13021

HON. ERIC T. SCHNEIDERMAN                         JAMES SEAMAN, ESQ.
Attorney General for the                          Assistant Attorney General
   State of New York
Attorney for Defendant
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

    Plaintiff pro se Daniel Clay ("Clay"), an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that the defendant, Director of Dental Services, Mary D'Silva ("D'Silva"), violated his constitutional rights under the Eighth Amendment. Compl. (Dkt. No. 1), Dkt. No. 9. Presently pending is D'Silva's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

---

    [1]This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Dkt. No. 12.  Clay opposes the motion.  Dkt. Nos. 15,16.  For the following reasons, it is recommended that D'Silva's motion be granted.

## I. Background

The facts are related herein in the light most favorable to Clay as the non-moving party. See Ertman v. United States, 165 F.3d 204, 206 (2d Cir. 1999).  All events appear to have occurred while Clay was incarcerated at Clinton Correctional Facility ("Clinton").

On October 11, 2006, Clay had one of his teeth removed by a Clinton dentist.  Compl. ¶ 1; Dkt. No. 9, Ex. A.[2]  On November 10, 2006, Clay requested medical services, known in DOCS facilities as a "call out slip," because he felt a piece of tooth remaining in his gums around the extraction site.  Compl. ¶ 2; Dkt. No. 9, Ex. B.  Clay submitted three additional call out slips for the same ailment on January 5, 9, and 14.  Compl. ¶¶ 3-5; Dkt. No. 9, Exs. C-E.  On January 29, 2007, Clay was again seen by the Clinton dentist, and the tooth fragment was removed.  Compl. ¶ 6; Dkt. No. 9, Ex. F.

The area around the extraction site continued to be sensitive and sore.  Compl. ¶ 8.  On July 11, 2007, Clay was examined by a second dentist at Clinton and was given an x-ray and told that there was another tooth fragment lodged in his gum which required removal. Id.  ¶¶ 9-10; Dkt. No. 9, Ex. F.  On October 18, 2007, a memorandum was distributed to all

---

[2] Consideration of a motion to dismiss "is limited to the facts asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007).  Initially, the documents that were labeled as exhibits in the complaint were not provided.  Dkt. No. 4.  However, they have since been provided (Dkt. No. 9) and were both referenced in, and allegedly initially attached to, the complaint; therefore, they will be considered in deciding the pending motion.

2

Clinton inmates memorializing minutes of a meeting between inmates and the medical staff. Dkt. No. 9, Ex. L.  The memorandum included a paragraph specific to dental care, discussing "the vacancy rate of Dental personnel statewide and [advocating] that more effort needs to be taken to help recruit and retain Dental professionals."  Id.  Dental staff at Clinton also "thanked inmates for their patience when faced with long waits for dental issues."  Id.  On December 23, 2007, Clay wrote a letter to the Facility Health Services Director complaining that the tooth fragment removal had neither been scheduled nor completed.  Compl. ¶ 11; Dkt. No. 9, Ex. G.

As no further action had been taken regarding Clay's dental requests, on January 25, 2008, he filed a grievance.  Compl. ¶ 12; Dkt. No. 9, Ex. H.  On February 28, 2008, the tooth fragment was removed from the extraction site.  Compl. ¶ 13; Dkt. No. 9, Ex. F. Again, the extraction site failed to heal properly.  Compl. ¶ 16.  Accordingly, Clay again submitted a medical call out slip on February 12, 2009.  Id. ¶ 17; Dkt. No. 9, Ex. I.  On June 24, 2009, Clay was seen by a third dentist at Clinton who again performed an x-ray and found a third piece of tooth fragment embedded in the gum at the initial extraction site. Compl. ¶ 18; Dkt. No. 9, Ex. J.  As of the time that Clay filed the complaint, on November 4, 2009, he was still awaiting removal of this tooth fragment.  Compl. ¶ 20.  This action followed.

## II. Discussion

Clay contends that his Eighth Amendment rights were violated because D'Silva "is responsible for making sure there [are] a sufficient amount of dentists at Clinton . . . [and

3

her] failure to provide a sufficient amount of dentists . . . amounts to callous indifference because Clinton . . . has the largest inmate population . . . in . . . New York." Compl. ¶¶ 22-23.  Therefore, her failure to provide adequate dental care resulted in undue delay and unnecessary bouts of prolonged pain and suffering.  Id.  D'Silva argues that Clay's contentions are meritless and that she is protected by qualified immunity.

### A. Legal Standard

Rule 12(b)(6) authorizes dismissal of a complaint that states no actionable claim.  When considering a motion to dismiss, "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994).  However, this "tenet . . . is inapplicable to legal conclusions[; thus, t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007) (holding that "entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . [as] courts are not bound to accept as true a legal conclusion couched as a factual allegation.")).

Accordingly, to defeat a motion to dismiss, a claim must include "facial plausibility . . . that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556 (explaining that the plausibility test "does not impose a probability requirement . . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].")); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that, "[o]n

a motion to dismiss, courts require enough facts to state a claim to relief that is plausible . . . .") (citations omitted).  Determining whether plausibility exists is "a content specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950-51.

When, as here, a party seeks dismissal against a pro se litigant, a court must afford the non-movant special solicitude. Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006); see also Sealed Plaintiff v. Sealed Defendant # 1, 537 F.3d 185, 191-92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds pro se, ... a court is obliged to construe his pleadings liberally.' " (citations omitted)).

### B. Eighth Amendment[3]

The Eighth Amendment provision against cruel and unusual punishment includes the provision of medical care. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (citations omitted).  A prisoner advancing an Eighth Amendment claim for denial of medical care must demonstrate deliberate indifference to a serious medical need. Wilson v. Seiter, 501 U.S. 294, 297 (1991); Hathaway, 37 F.3d at 66.  More than negligence is required "but less than conduct undertaken for the very purpose of causing harm." Hathaway, 37 F.3d at 66.  The test for a § 1983 claim is twofold.  First, the prisoner must show that there was a sufficiently serious medical need. Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998).  Second,

---

[3] To the extent Clay is attempting to bring this action on behalf of other inmates at Clinton, such attempts are precluded as Clay has no standing to assert claims on behalf of the other inmates. Seift v. Tweddell, 582 F. Supp. 2d 437, 449 (W.D.N.Y. 2008) (citations omitted).

5

the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm. Id. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Farmer v. Brennan, 511 U.S. 825, 844 (1994).

"'Because society does not expect that prisoners will have unqualified access to healthcare,' a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim. Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003)(quoting Hudson v. McMillian, 503 U.S. 1,9 (1992)). Because there is no distinct litmus test, a serious medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." Brock v. Wright, 315 F.3d 158, 162-63 (2d Cir. 2003)(citing Chance, 143 F.3d at 702). The severity of the denial of care should also be judged within the context of the surrounding facts and circumstances of the case. Smith, 316 F.3d at 185.

Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs." Chance, 143 F.3d at 702. Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle v. Gamble, 429 U.S. 97, 104, (1976). "Mere disagreement over proper treatment does not create a constitutional claim" as long as the treatment was adequate. Chance, 143 F.3d at 703; see also Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 312 (S.D.N.Y, 2001) (".Thus,

6

disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim."). Furthermore, allegations of negligence or malpractice do not constitute deliberate indifference unless the malpractice involved culpable recklessness. Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).

D'Silva neither disputes nor concedes that Clay's dental problems constituted a serious medical need. Rather, D'Silva contends that she was not deliberately indifferent to his needs. "Evidence of understaffing, without more, is not proof of official policy." Hood v. Itawamba County, Miss., 819 F. Supp. 556, 566 (N.D. Miss. 1993) (citations omitted); see also Gagne v. City of Galveston, 671 F. Supp. 1130, 1135 (S.D. Tex. 1987), aff'd, 851 F.2d 359 (5th Cir. 1986) (citations omitted). Understaffing may support a § 1983 action "only if more complete funding and staffing were possible, and . . . it was the deliberate intent of the policy making official not to adequately fund and staff the jail, having in mind a gross indifference to the medical needs of . . . detainees." Gagne, 671 F. Supp. at 1135; see also Mosley v. Deperio, No. 03-CV-6362, 2005 WL 2030738, at *4 (W.D.N.Y. Aug. 23, 2005) ("[D]eliberate indifference to inmates' health needs may be shown . . . by proving that there are such systemic and gross deficiencies in staffing . . . that the inmate population is effectively denied access to adequate medical care . . . .") (citing Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980).

In this case, even viewing the evidence in the light most favorable to Clay, he has failed to raise a plausible claim that D'Silva was acting with deliberate indifference. Clay's submissions indicate that for the majority of the time he was at Clinton there were two dentists on staff, with a third recently hired. Dkt. No. 15 at (1)-(2). Thus, it is undisputed

from both his proffers and attached medical records that Clay was still receiving dental care. However, documents which Clay attached to his complaint indicate that the dental department had an overall problem with recruitment and retention of dental staff, resulting in a state-wide shortage for the position. Dkt. No. 9, Ex. L. Moreover, the medical dental department acknowledged the long waits the inmates were experiencing, thanking them for their patience, and explaining that treatment was occurring in order of emergent cases. Id. This discourse illustrates that defendant was aware of the problem and was attempting to alleviate, or at least mitigate, its consequences.

As previously stated, the fact that a facility is understaffed alone is insufficient to establish deliberate indifference. Additionally, the facts alleged by Clay fail to establish that there was such a deficiency in staffing that Clay failed to receive treatment but that treatment was delayed. No evidence has been proffered that additional funds or staffing were available to remedy the situation. In fact, the evidence presented by Clay shows quite the opposite. D'Silva neither created the state-wide shortage of dentists nor the general issues with recruitment and retention. The practical consequence of the state-wide shortage in dental staff for DOCS, while unfortunate, was not a product of D'Silva's conduct and cannot be characterized as deliberate indifference on her part.

Accordingly, D'Silva's motion on this ground should be granted.

### C. Qualified Immunity

D'Silva also contends that she is entitled to qualified immunity. Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person

would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003). However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights . . . immunity might still be available as a bar to . . . suit if it was objectively reasonable for the public official to believe that his acts did not violate those rights." Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991) (citations omitted). A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230.

In this case, the second prong of the inquiry need not be reached because, as discussed supra, accepting all of Clay's allegations as true, he has not alleged that D'Silva violated his constitutional rights. Accordingly, in the alternative, D'Silva's motion to dismiss should be granted on this ground.

### III. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that D'Silva's motion to dismiss (Dkt. No.12) be **GRANTED** and that the complaint be **DISMISSED** as to all claims.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE**

**REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: February 1, 2011
       Albany, New York

*David R. Homer*
United States Magistrate Judge